IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOLLY MAYFIELD AND | ) | |
| GREENFLEX FINANCIAL, PLLC | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Amount Demanded: $75,000+ |
| ANGEL ESCOBEDO AND HOOSIER | ) | |
| WRESTLING, INC | ) | Jury Trial Demanded |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiffs, Molly Mayfield ("Mayfield") and Greenflex Financial, PLLC ("Greenflex") (together "Plaintiffs"), complain of Defendants Angel Escobedo ("Escobedo") and Hoosier Wrestling, Inc ("HW") (together "Defendants"); and seek appropriate judicial relief, stating as follows:

### Jurisdiction

1. Mayfield is a citizen of Illinois. She is the sole owner of Greenflex, which is also an Illinois citizen. Escobedo is a citizen of Indiana who frequently travels to the Chicago area. HW is a citizen of Indiana but does business in the Chicago area. Escobedo is employed by HW and was working within the scope of his employment at all relevant times.

2. Plaintiffs seek more than $75,000 in damages, exclusive of interest and costs. Since Plaintiffs seek more than $75,000 in damages and the parties are citizens of different states, the Court has jurisdiction pursuant to 28 U.S. Code § 1332(a)(1).

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred within the Northern District of Illinois.

1

**BACKGROUND FACTS**

4.   On or about November 2021, Greenflex, through Mayfield made an oral offer to provide accounting services to HW, which was represented by Escobedo. According to the terms of the offer,  Greenflex agreed to recruit and work with an accounting professional partner to reinstate HW's non-for-profit status so that it could accept a $1,000,000 donation at a base fee of $2,500. Greenflex also offered to provide general accounting services, including preparing and filing HW's unfiled tax returns for each year, beginning the year 2018 through 2021 at a monthly fee of $325 for the first five hours and an hourly rate of $65 for any hours after the first five. Greenflex further agreed to donate its services for preparing and filing the tax return for 2021 only.

5.   HW, through Escobedo, accepted the offer on or about November 2021.

6.   At relevant times, Greenflex identified a partner, Gena ("Gena"), who could help prepare the package to reinstate HW's non-for-profit status.

7.   On or about August 12, 2022, Escobedo sent a text message to Mayfield, inquiring if Gena was "helping out at all." Escobedo stated that he felt like requesting a full refund since he had paid Gena 2500 dollars and "it's been a whole year!". In reality, Escobedo did not pay Gena or Greenflex $2,500.

8.   Gena was unable to complete the work without first getting paid or securing a written agreement for payment from Escobedo and HW. Therefore, Greenflex completed the work that Gena should have done. In the end, Greenflex generated and sent several invoices to HW, the last two totaling $10,189.50, which remain unpaid, despite several requests and follow ups.

9.   At relevant times, Mayfield reasonably believed that she was authorized to pay outstanding invoices submitted to HW through Quickbooks accounting software from her computer because of statements that HW representatives had previously made to her.

2

10. On or about November 5, 2022, Mayfield paid two invoices that had been incorrectly billed for $5,614.50. The invoices should have been billed at $10,189.50.

11. On or about November 8, 2022, Escobedo placed a phone call to Nichole Banks ("Banks"), who lives in and was in Iowa at the time, and stated to her that Molly had committed fraud by paying herself the two invoices. Escobedo also suggested that Mayfield's CPA license would be revoked, that he had reported the fraud to Chase bank, and that he would file a police report. Banks relayed Escobedo's statements to Mayfield over the telephone, who was in Illinois at the time.

12. Escobedo's statements to Banks were false, and Escobedo knew, or should have known that they were false. Upon information and belief, Escobedo made similarly false statements to Chase and other individuals or entities in Illinois, Iowa and Indiana. Escobedo made the false statements with malice or reckless regard for their truth. Between at least October 21, 2022 and when he made the false statements, Plaintiffs gave Escobedo several opportunities to ascertain the truth of the statements, but he repeatedly ignored or disregarded communications from Plaintiffs and their counsel.

13. On or about November 9, 2022, in a good faith effort to resolve the issues between the parties, Greenflex wired $5,614.50 to HW, but noted that it was entitled to the money and was reserving all its legal rights. HW received the $5,614.50. Greenflex also incurred costs of about $100.

**COUNT ONE**
**BREACH OF CONTRACT**
**Greenflex v. HW**

14. Greenflex re-alleges and re-asserts paragraphs 1-13 as if fully set forth herein.

15. At relevant times, Greenflex and HW entered into a valid and enforceable oral contract in which Greenflex agreed to provide accounting services to HW in exchange for monetary

payments.

16. Greenflex fully or substantially performed its obligations under the contract.

17. Greenflex did not breach any term of the agreement.

18. HW breached the agreement by failing to pay for the services that HW provided, and to honor other terms of the agreement.

19. As a proximate or direct result of HW's breach, Greenflex has suffered actual and consequential damages.

**WHEREFORE**, Greenflex prays that this court enter judgment on its behalf and against HW for actual and consequential damages.

## COUNT TWO
## PROMISSORY ESTOPPEL
### Greenflex v. HW

20. Greenflex re-alleges and re-asserts paragraphs 1-13 as if fully set forth herein.

21. On or about November 2021, HW made an unambiguous promise to Greenflex that it would pay it for accounting services that it provided to HW.

22. HW could reasonably foresee that its promise would lead Greenflex to not pursue other business opportunities and spend its time working on HW's accounting needs.

23. Greenflex actually relied on HW's promise to its detriment and worked on HW's accounting needs instead of pursuing other business opportunities.

24. Greenflex's reliance on HW's promise resulted in a substantial change in Greenflex's position with regards to the time it could have spent on other business opportunities.

25. HW breached its promise by failing to pay Greenflex for accounting services valued at about $10,189.50.

26. As a proximate or direct result of HW's breach, Greenflex has suffered actual and

4

consequential damages.

**WHEREFORE**, Greenflex prays that this court enter judgment on its behalf and against

HW for actual and consequential damages in excess of $10,000.

### COUNT THREE
### SLANDER *PER SE*

27. Plaintiffs re-allege and re-assert paragraphs 1-13 as if fully set forth herein.

28. Defendants' conduct as described above constitute slander *per se* against Plaintiffs.

29. As a result of Defendants' conduct, Plaintiff Mayfield has suffered and will continue to

suffer injury to her reputation, feelings, humiliation, and mental anguish. This harm has reduced

her productivity and will cause Greenflex to suffer financial harm.

30. Defendants are liable to Plaintiffs for slander *per se*.

**WHEREFORE**, Plaintiffs pray that this court enter judgment on their behalf and against

Defendants for damages in excess of $75,000.

### COUNT FOUR
### UNJUST ENRICHMENT/QUANTUM MERUIT
### Greenflex v. HW

31. Greenflex re-alleges and re-asserts paragraphs 1-13 as if fully set forth herein.

32. At relevant times, Greenflex provided valuable professional accounting services to HW

that enabled it to regain and maintain its non-for-profit status, to accept at least $1,000,000 in

donations. HW has enriched itself by obtaining but refusing to pay for Greenflex's professional

services. As a result, Greenflex has been impoverished.

33. There is a direct relation between HW' enrichment and Greenflex's impoverishment.

34. There is no justification  - or absence of justification for HW's conduct.

35. There is absence of an adequate remedy provided by law to make Greenflex whole.

**WHEREFORE**, Greenflex prays that this court enter judgment on its behalf and against

HW for actual and consequential damages in excess of $10,000 for unjust enrichment and/or

*quantum meruit*.

## JURY DEMAND

36. Plaintiffs hereby demands a trial by jury of twelve pursuant to Rule 38(b) of the Federal

Rules of Civil Procedure on all triable issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this court enter judgment on their behalf and against

Defendants as follows:

A.  That Greenflex be awarded actual and consequential damages;

B.  That a money judgment be entered against Defendants, jointly and severally; and

C.  That Plaintiffs be awarded any and all appropriate relief under the circumstances.

Respectfully Submitted

/s/ Eric Onyango

Eric Onyango
Counsel for Plaintiffs
Prime Legal, LLC
222 North Columbus Drive Suite 1507
Chicago, IL 60601

6