**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Molly Mayfield, et al. | |
| *Plaintiffs,* | No. 22 CV 6495 |
| v. | |
| Angel Escobedo, et al. | Judge Lindsay C. Jenkins |
| *Defendants.* | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Angel Escobedo and Hoosier Wrestling, Inc.'s motion to strike and dismiss portions of Molly Mayfield's and GreenFlex Financial, PLLC's second amended complaint. The motion's reasoning is straightforward: the pleading is largely a frivolous attempt by Mayfield to avoid the impact of the Court's prior ruling by re-alleging the dismissed defamation count as different torts and claims for damages. The Court agrees. It is black-letter law that constitutionally protected opinions cannot support other causes of action. Accordingly, Defendants' motion is granted. Mayfield may proceed only on her claims related to the contract dispute.

## I.     Background

This is the third motion to dismiss the Court has resolved in this case. The first was granted in full with leave to amend; the second in part. [*See* Dkts. 24, 34, 40.] The Court's last order dismissed Mayfield's defamation claim against Escobedo, her brother-in-law, with prejudice. [Dkt. 34 at 3-5; Dkt. 40 at 5.][1] The Court held

---

[1]     Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

Escobedo's statement that Mayfield "committed fraud" by using her access to Hoosier's bank account to pay herself for services Escobedo avers she did not perform was a constitutionally protected opinion. [*Id.*] The Court likewise ruled Escobedo's statements regarding steps he planned to take with banks and state licensing agencies in response to Mayfield's "fraud" were inactionable truthful statements of what Escobedo intended to do (collectively "Dismissed Statements"). [*Id.*] The dismissal was with prejudice because the Court already gave Mayfield an opportunity to "provide a precise recitation of the alleged defamatory statement in its entirety."[2] [Dkt. 34 at 6-7.]

Without the defamation claim, Mayfield could not pursue a host of alleged economic and emotional damages allegedly caused by Escobedo's statements. These included hundreds of thousands of dollars in lost business revenue, $50,000 in medical bills, and $400,000 in a lost job opportunity.[3] [Dkt. 26 at 5-7.] Instead, all of Mayfield's surviving causes of action—breach of oral contract, promissory estoppel, and unjust enrichment—were related to the roughly $10,000 worth of accounting services for which she alleges Defendants have withheld payment. [Dkt. 40 at 5.]

In response to the Court's order, Mayfield filed a motion requesting leave to file a second amended complaint. [Dkt. 44.] Mayfield referred to "certain [new] statements made by Defendants to witnesses" which required an amended pleading

---

[2]     In so ruling, the Court noted its concern with inconsistencies between Mayfield's initial and revised version of the defamatory statement. [Dkt. 34 at 6-7.]
[3]     None of these damages were present in Mayfield's initial complaint (which was dismissed for lack of subject-matter jurisdiction), even though Mayfield knew the basis for the damages at the time of filing. This prompted the Court to again express apprehension with Mayfield's pleading style. [Dkt. 40 at 3 n.5.]

to "add new claims, drop the claim that the Court has dismissed with prejudice in order to simplify the litigation, and to refine their allegations generally." [*Id.* at 2.] The Court granted the motion.

Mayfield's second amended complaint added claims for intentional infliction of emotional distress, intentional tortious interference with prospective economic advantage, and negligent supervision. [Dkt. 49 at 6-9.] Mayfield also amended her contract-based claims to allege a series of consequential damages based on emotional harm she allegedly suffered because of the breach. [*Id.* ¶¶ 18, 26.]

A not-so-close reading of the pleading demonstrates these changes are not based on new conduct from Defendants, but are instead premised on the same Dismissed Statements the Court already held were non-actionable:

- *Breach of Contract / Promissory Estoppel*: "HW also acted in bad faith when it breached the agreement. For example, it falsely claimed that Mayfield had paid herself for services she had not performed without authorization. It also falsely accused Mayfield of committing fraud by paying herself for services she had not performed without authorization. HW spread the false statements to Mayfield's family members. HW's actions caused Greenfield to suffer consequential damages, which include emotional distress suffered by Mayfield, attorney's fees and costs, loss of revenue and profits suffered by Greenflex and Mayfield because of the emotional distress and depression, loss of goodwill, and breakdown in family relationships. These damages were foreseeable and within the contemplation of the parties when they entered into their agreement." ¶¶ 18, 26.

- *Intentional Infliction of Emotional Distress*: "At relevant times, Escobedo and others who Plaintiff currently does not know, made false statements accusing Mayfield of having committed fraud against HW to JP Morgan Chase Bank and several family members after Mayfield requested payment for services that she had provided to HW, and paid herself with HW's authorization." ¶ 35.

- *Tortious Interference*: "Escobedo intentionally and unjustly induced the breach of Plaintiffs' reasonable expectancy to enter into a valid and continuing business relationship with HW for accounting and/or book keeping services, by among other acts: Falsely accusing Mayfield of engaging in fraud by paying herself for services that she had not performed, and making those accusations to JP Morgan Chase Bank and to Mayfield's family members." ¶ 45(b).

- *Negligent Supervision*: "HW negligently supervised Escobedo and allowed him to cause harm to Plaintiffs by, among other acts: Telling third parties, including family members that Mayfield had committed fraud against HW by paying herself for services that she had not performed without permission, when Mayfield did in fact have HW's permission to pay herself and she had in fact performed the services." ¶ 53(a).

Mayfield has simply repurposed her dismissed defamation claim and the parade of emotional damages that come with it under new legal theories. Indeed, Mayfield's only "new" allegations appear to be that "Mayfield believes that Escobedo also told third parties including family members, falsely, that Mayfield is a whore, and that she filed her lawsuit in bad faith" and that Escobedo did not pay Mayfield for the accounting services because it would "please his wife's wishes, who was jealous of Plaintiffs' business relationship with HW." [*Id.* ¶¶ 36, 45(a).]

In response to Mayfield's latest pleading, Defendants moved to strike her consequential damages allegations pursuant to Rule 12(f) and moved to dismiss her IIED, tortious interference, and negligent supervision claims on the merits. [Dkt. 51.]

## II.   Analysis

On a motion to dismiss under Rule 12(b)(6), the Court takes the well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm*, S.C., 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–27 (7th Cir. 2023). Rule 12(f) allows the Court to "strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored but can be proper where they expedite the litigation. *Pavlik v. FDIC*, 2010 WL 3937621, at *1 (N.D. Ill. Oct. 5, 2010) (citing *Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 728 (7th Cir. 2006)).

### A. Motion to Strike

It is well-settled law in Illinois that "a determination that language is not actionable under the first amendment not only is fatal to" a plaintiff's "defamation claims, it precludes them from obtaining recovery under any of the other common law and statutory claims they asserted in their complaint." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1024 (Ill. 2008). Put differently, when "statements are constitutionally protected expressions of opinion, all of [a party's] other claims based on those statements fail as a matter of law."[4] *Perfect Choice Exteriors, LLC v. Better Bus. Bureau of Cent. Ill., Inc.*, 99 N.E.3d 541, 552 (Ill. App. Ct. 2018).

Accordingly, Defendants ask the Court to strike Mayfield's request for consequential damages in her breach of contract and promissory estoppel claims because the sole basis for the allegations is the Dismissed Statements. [Dkt. 49 ¶¶ 18, 26; Dkt. 51 at 5.]

Mayfield does not distinguish the above case law; she does not even mention it. Instead, Mayfield attempts to parse the Court's prior ruling to argue its current

---

[4]      The plaintiff in *Perfect Choice* admitted "if its defamation claims fail, the remaining counts asserted in its amended complaint 'fail as well.'" *Id.* at n.5.

allegations are distinct from what the Court already dismissed. Specifically, Mayfield contends her allegation that "Mayfield had paid herself for services she had not performed without authorization" is not part of the Dismissed Statements. [Dkt. 52 at 6.]

This is nonsense. In Mayfield's response to the Court's request for a "succinct[] and precise[]" statement articulating Mayfield's defamation claim, [Dkt. 31], Mayfield stated Escobedo told various people, including family members, "that, without permission, Mayfield had taken more than $5,000 from Hoosier's bank account, that she (Mayfield) had stolen the money to pay for work that she had not done." [Dkt. 32.] The statements are nearly verbatim; Mayfield paying herself for work she did not perform is what Escobedo believes constituted "fraud." The Court already considered and dismissed this statement as protected by the First Amendment.

Mayfield's briefing also contends Escobedo, "through others", called Mayfield a "hoe" and "scammer" sometime after July 19, 2023. [Dkt. 52 at 6.] But it defies credulity to see how these statements—made by non-defendants at least 9 months after Defendants refused to pay Mayfield for the accounting work—could possibly support consequential damages for a breach of contract claim. The statements are not related to the contract or breach, and the alleged contract (helping Hoosier obtain a certain tax status) is not one where emotional damages were contemplated or foreseeable. *See Schau v. Bd. Of Educ.*, 2014 WL 1716246, at *3 (C.D. Ill. May 1, 2014) (Illinois law only permits emotional distress damages in breach of contract

6

cases when "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.")[5]

The Court agrees Mayfield's request for consequential damages in Counts I and II of the second amended complaint must be stricken. Permitting Mayfield to take discovery based on these allegations, which include a litany of emotional damages on far flung issues, would unnecessarily delay the litigation. *See Pavlik*, 2010 WL 3937621, at *1. Defendants' motion to strike is granted.

**B.  Motion to Dismiss**

Defendants have also moved to dismiss the three new claims Mayfield raises in her second amended complaint. As with the motion to strike, Defendants' primary argument is the causes of action rely on the Dismissed Statements.

### i.  Intentional Infliction of Emotional Distress

Mayfield brings a claim for IIED based on two incidents; the Dismissed Statements, and Escobedo purportedly calling Mayfield a "whore" who "filed her lawsuit in bad faith." [Dkt. 49 at 6.] To establish a claim for IIED in Illinois, a plaintiff must plead three elements: "First, the conduct in question was truly extreme and outrageous. Second, the actor intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would have caused such distress. Third, the conduct in fact caused severe emotional distress." *Sun v. Xu*, 99

---

[5]    Because Mayfield does not allege any facts that would support the conclusion the accounting services contract with Hoosier was likely to result in emotional damages, the Court would also dismiss these allegations under Rule 12(b)(6), as Defendants requested in the alternative. [Dkt. 51 at 5-6.]

F.4th 1007, 1013 (7th Cir. 2024) (citing *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016)).

As discussed above, the Dismissed Statements cannot support any tort, *Imperial Apparel, Ltd.*, 882 N.E.2d 1011, at 1024, so the Court will focus on whether Escobedo's alleged isolated name calling rises to an actionable level. The Court has little trouble in concluding it does not. "To meet the threshold for intentional infliction of emotional distress, the defendant's conduct must extend beyond the bounds of human decency and be considered intolerable in a civilized community." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008). This does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 746-47. Rather, this tort is reserved for conduct where "the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!'" *Id.* at 747 (quoting *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)).

Mayfield's allegations fall well short of this high standard. While crass, this isolated comment made outside her presence is plainly a non-actionable insult or indignity. *Lewis*, 523 F.3d 730 at 747; *see also Fields v. Jackson*, 2017 WL 4150682 (N.D. Ill. Sept. 19, 2017) (defendant calling plaintiff a "con artist" and "bitch" was not extreme and outrageous conduct).

Mayfield's arguments in response do not alter this result. Without citing to any case law where courts have found similar allegations adequate, Mayfield instead regurgitates her conclusory allegations and states they satisfy the pleading standard.

[Dkt. 52 at 7-8.] But this Court need only take well-pleaded factual allegations as true, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Accordingly, Mayfield's intentional infliction of emotional distress is dismissed.

### ii. Tortious Interference

Next is Mayfield's claim for tortious interference with prospective economic advantage, which Defendants contend is actually a claim for tortious interference with contract.[6] [Dkt. 51 at 10.] It matters not; either way, the claim must be dismissed.

To state a claim for interference with prospective economic advantage, a plaintiff must allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014); *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996). The defendant's actions in such claims "must be directed at third-party business

---

[6]    Reviewing Mayfield's pleading in the light most favorable to her, the Court will assume she alleges both torts: one based on Escobedo breaching the existing contract, and the other on Escobedo ceasing future business opportunities with Greenflex. [Dkt. 49 at 7-8]; *International Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731 (7th Cir. 1999) (although "related torts", a claim for tortious interference with contract exists when there are "existing contractual rights", whereas tortious interference with prospective economic advantage occurs when "the plaintiff's economic expectancy has not yet solidified into a contractual relationship.")

prospects." *Id.* A claim for tortious interference with contract "requires the plaintiff to prove that the defendant induced a third party to breach a contract." *Id.*; *see also Koehler v. Packer Group, Inc.*, 53 N.E.3d 218, 237 (Ill. App. Ct. 2016) ("it is settled law that a party cannot tortiously interfere with his or her own contract.")

Under either tort, then, the plaintiff must allege the defendant improperly interfered with the plaintiff's relationship with a third party. *Webb v. Frawley*, 906 F.3d 569, 577-78 n.4 (7th Cir. 2018) (Illinois law requires a tortious interference claim to be premised on acts directed to a third party); *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 641 N.E.2d 584, 590 (Ill. App. Ct. 1994) ("it has been long held that the defendant's interference must be directed toward a third party.")

This is an insurmountable hurdle for Mayfield as Escobedo's actions were not aimed at a third party. Mayfield points to two ways in which Escobedo tortiously interfered: the Dismissed Statements, and Escobedo "persuading HW's Board to not pay Greenflex for its services and to stop conducting business with Plaintiffs so that it could please his wife's wishes, who was jealous of Plaintiffs' business relationship with HW." [Dkt. 49 at 7-8.] The former is not actionable for the reasons stated above, and because Mayfield has not alleged how the Dismissed Statements interfered with any established or prospective business, as opposed to familial, relationships.

Likewise, Mayfield's second basis was not directed to a third party because Escobedo was working in his capacity as an employee for Hoosier when he purportedly persuaded its Board to not pay Mayfield and cease doing business with

Greenflex. Mayfield herself alleges, "Escobedo is employed by HW and was working within the scope of his employment at relevant times." [Dkt. 49 ¶ 1.]

Mayfield argues an exception to the third-party rule applies. Specifically, Mayfield contends Escobedo cannot invoke the corporate officer privilege because he interfered with Hoosier's relationship with GreenFlex for personal motives. [Dkt. 52 at 10-11.] There are two problems with Mayfield's argument: first, the corporate officer privilege does not excuse the requirement that the defendant's actions must be aimed at some third party. Second, even if it did, Mayfield has not adequately alleged Escobedo acted contrary to Hoosier's interest.

The corporate officer privilege permits officers to "interfere with a contract where they use business judgment to act on behalf of their corporation" without fear of personal liability.[7] *Webb*, 906 F.3d 569, at 577. This privilege is inapplicable, and a corporate officer may be liable for tortious interference, where he induced his employer to breach a contract "to further their personal goals or to injure the other party to the contract, *and* acted contrary to the best interest of the corporation." *George A. Fuller Co., Div. of Northrop Corp. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1333 (7th Cir. 1983) (emphasis in original). The officer's actions must be "unjustified or malicious", which occurs when the conduct is "totally unrelated or even antagonistic to the interest" of the employer. *Serv. by Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 864-65 (N.D. Ill. 2015).

---

[7]     Although not alleged in the second amended complaint, the Court assumes Escobedo is an officer of Hoosier.

The Seventh Circuit recently clarified the corporate officer privilege does not impact the requirement under Illinois law that the alleged tortious interferer direct his conduct toward some third party. *Creation Supply, Inc. v. Cherrie*, 61 F.4th 511, 513 (7th Cir. 2023) ("In Illinois, tortious interference requires some sort of interloper"); *see also Webb*, 906 F.3d at 577. In *Webb*, the appellant-plaintiff argued Illinois state court "recognized an exception to the third-party rule where the interference was by a corporate officer." *Id.* The Seventh Circuit referred to this contention as a "misstatement of the law", and then explained in a footnote that "[t]here is no exception" to the third-party rule. *Id.* at 578, n. 4. Because Mayfield does not allege Escobedo interfered with her relationship with a third party, the corporate officer privilege is immaterial.

A review of Mayfield's particular allegations yields the same result. Mayfield has the burden of pleading facts that overcome the privilege. *Creation Supply, Inc.*, 61 F.4th at 514. Mayfield contends her claim can proceed based on this exception because she alleges Escobedo induced the breach of Hoosier's contract with GreenFlex to "please his wife's wishes, who was jealous of Plaintiffs' business relationship with HW." [Dkt. 49 ¶ 45(a).]

This allegation may establish Escobedo acted for personal reasons or to harm Mayfield, but Mayfield does not take the next step and allege how Escobedo persuading Hoosier to breach the contract with GreenFlex was "contrary to the best interest of the corporation." *Fuller*, 719 F.2d 1326, at 1333 (dismissing tortious

12

interference claim where plaintiff did not allege defendant acted in interest other than corporation's).

Indeed, Mayfield herself admits GreenFlex failed to facilitate performance of the contract through its "partner", that it took over nine months for GreenFlex to provide the services, and that Escobedo was frustrated by GreenFlex's delay. [Dkt. 49 ¶¶ 4-8.] Mayfield does not allege facts which show GreenFlex's services were particularly valuable or unique to Hoosier, or that Escobedo's decision to terminate its relationship with GreenFlex was not in Hoosier's interest. Accordingly, Escobedo would be entitled to the privilege which protects officers from "litigation every time they exercised their business discretion to cause their corporations not to perform a contract." *Serv. by Air, Inc.*, 78 F. Supp. 3d 852, at 865.

Because Escobedo's actions were not directed towards a third party, and Mayfield has failed to allege Escobedo was not acting in Hoosier's best interest, her tortious interference claim is dismissed.[8]

### iii.   Negligent Supervision

Finally, Mayfield alleges Hoosier negligently supervised Escobedo by allowing him to (i) make the Dismissed Statements; and (ii) withhold payment for Mayfield's

---

[8]    Even if Mayfield had adequately pled a tortious interference claim, her damages would be limited to the value of the interference; she would not be permitted to recover subsequent emotional damages from the breach. *JamSports & Entm't, LLC v. Paradama Prods.*, 382 F. Supp. 2d 1056, 1067 (N.D. Ill. 2005) ("Ordinarily damages for tortious interference with a contract are the same as damages for breach of that contract"); *Klaff v. Wieboldt Stores, Inc.*, 1988 WL 142163, *6 (N.D. Ill. Dec. 23, 1988) ("The aim of awarding damages for tortious interference is the same as that of awarding damages for breach of contract—to place the injured party in the same economic position it would have been in had the contract not been breached.")

accounting services. [Dkt. 49 at 8-9.] A claim for negligent supervision under Illinois law requires a plaintiff to allege "(1) the defendant had a duty to supervise the harming party, (2) the defendant negligently supervised the harming party, and (3) such negligence proximately caused the plaintiff's injuries." *Doe v. Coe*, 135 N.E.3d 1, 15 (Ill. 2019). In what should now be a familiar refrain, the Dismissed Statements cannot support Mayfield's claim for negligent supervision.[9] *Imperial Apparel, Ltd.*, 882 N.E.2d 1011, at 1024.

This leaves the theory that Hoosier negligently supervised Escobedo in allowing him to convince Hoosier to breach the contract by not making payments.[10] While this claim is doomed to fail for myriad reasons, the Court need only discuss one: it is barred by Illinois's economic loss doctrine. *McCartney v. Platte River Ins. Co.*, 631 F. Supp. 3d 561, 570 (N.D. Ill. 2022) ("the economic loss doctrine, 'bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations'") (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012)); *Pape v. Braaten*, 2022 WL 888812, at *32 (N.D. Ill. Mar. 25, 2022) (Illinois's economic loss doctrine "precludes negligent supervision liability where, in the course of performing a contract between the defendant and the plaintiff, the defendant's employees negligently cause the plaintiff to suffer some purely

---

[9]    The Court also notes Mayfield has not alleged Escobedo made the Dismissed Statements during work, so it is doubtful Hoosier had a duty to supervise him. *See Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 650-52 (7th Cir. 2017) (explaining an employer does not have a duty to supervise employees where employee is not on employer's premises, using the employer's chattels, or using employee's authority to commit the tort).

[10]    It is unclear to the Court how Hoosier's intentional decision to not perform under the contract could be attributed to negligently supervising Escobedo, especially where Mayfield alleges Escobedo "persuad[ed] HW's Board to not pay Greenflex." [Dkt. 49 at 7.]

economic form of harm.") Simply put, Mayfield is trying to recover for losses allegedly owed to her under the contract. She may do so under the various breach of contract theories she is pursuing, but Illinois law does not permit her to also do so under negligence theories.

## IV. Conclusion

For the reasons stated herein, Defendants' motion is granted in full. Mayfield's request for consequential damages in Counts I (breach of oral contract) and II (promissory estoppel) are stricken pursuant to Rule 12(f). Count IV (intentional infliction of emotional distress), Count V (tortious interference), and Count VI (negligent supervision) are dismissed pursuant to Rule 12(b)(6) and the dismissal will be with prejudice.

Mayfield has now had three opportunities to plead her claim against Defendants. In her first amended complaint, the factual allegations changed drastically. In her second amended complaint, the legal theories changed drastically. Both amended pleadings belie Mayfield's desire to bootstrap myriad personal misfortunes to a minor contract dispute worth scarcely $10,000.[11]

Mayfield has had ample opportunity to plead various theories but has failed to state claims beyond the contract dispute.[12] *Protect Our Parks, Inc. v. Buttigieg*, 97

---

[11]     Worse still, Mayfield averred she spent over three times this amount, $33,000, in legal fees for this case as of the parties' briefing to dismiss the *first* amended complaint, nearly eight months ago. [Dkt. 29-2 ¶ 9.]

[12]     Not even these claims are immune from issues. Despite Mayfield's representation that no written contract existed between the parties for the services Mayfield rendered, Defendants have produced a contract which suggests Greenflex would do the accounting services for free. [Dkt. 43-1 at 4 ("At no additional hourly or annual charge, GreenFlex will

F.4th 1077, 1088 (7th Cir. 2024) ("a district court does not abuse its discretion in

denying a motion to amend when amending the pleading would be a futile act.")

Enter: 22 CV 6495
Date:  May 21, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

work with you and the appropriate parties to get Hoosier Wrestling Non Profit in proper
501c3 status. Included in our service to you, GreenFlex will file your annual 990 tax return
per IRS guidelines.")] The Court did not rely on this contract in ruling on the motion, but its
existence further illustrates Mayfield's apparent willingness to plead whatever she believes
will keep her in federal court.